**GREENBERG TRAURIG, LLP**

| | |
|---|---|
| Shari L. Heyen | John D. Elrod |
| Texas Bar No. 09564750 | *ElrodJ@gtlaw.com* |
| *HeyenS@gtlaw.com* | 3333 Piedmont Road, Suite 2500 |
| 1000 Louisiana St., Suite 1700 | Atlanta, Georgia 30305 |
| Houston, Texas 77002 | Telephone:    (678) 553-2259 |
| Telephone:    (713) 374-3564 | Facsimile:    (678) 553-2269 |
| Facsimile:    (713) 374-3505 | |

**COUNSEL FOR PLAINTIFF ALAN D. HALPERIN,
SOLELY IN HIS CAPACITY AS UNSECURED
CREDITOR TRUSTEE**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| **SENIOR CARE CENTERS, LLC,** *et al.*[1], | **Case No. 18-33967-sgj** |
| **Debtors.** | **(Jointly Administered)** |
| **ALAN D. HALPERIN,** as Unsecured Creditor Trustee, | **Adv. Proc. No. 20-03176** |
| **Plaintiff,** | |
| v. | |
| **B & C INVESTMENTS, LLC,** | |
| **Defendant.** | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND SUPPORTING BRIEF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the Order (I) Directing Joint Administration of Chapter 11 Cases, and (II) Granting Related Relief [Docket No. 569].

## TABLE OF CONTENTS

SUMMARY OF THE RESPONSE ................................................................................... 1

APPLICABLE LEGAL STANDARD ............................................................................. 1

ARGUMENTS AND AUTHORITIES.......................................................................... 2

    I.       The Court should not consider additional facts alleged by the Defendant. ............. 2

    II.      The Trustee sufficiently alleges that the Defendant is an insider of SCC. ............. 4

    III.    The Trustee properly pleads a claim for an actual fraudulent transfer. ................... 8

    IV.    The Trustee properly alleges that the Debtors were insolvent.............................. 11

    V.      The Trustee sufficiently pleads that SCC did not receive reasonably
           equivalent value for the Transfer. ....................................................................... 13

CONCLUSION....................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Actrade Fin. Tech. Ltd.*,
    337 B.R. 791 (Bankr. S.D.N.Y. 2005) ....................................................................11

*Adelphia Commc'ns Corp. v. Bank of Am., N.A. (In re Adelphia Commc.'ns
    Corp.)*,
    365 B.R. 24 (Bankr. S.D.N.Y. 2007) ......................................................................11

*In re Am. Airlines, Inc., Privacy Litig.*,
    370 F.Supp.2d 552 (N.D. Tex. 2005) (Fitzwater, J.) ................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................2

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 555 (2007) .............................................................................................2, 12

*Browning Interests v. Allison (In re Holloway)*,
    955 F.2d 1008 (5th Cir. 1992) ...............................................................................5, 6

*Bsg Clearing Solutions v. McKay*,
    2017 U.S. Dist. LEXIS 226551 (W.D. Tex. 2017) ...................................................8

*Cohen v. Gilmore (In re Ala. & Dunlavy, Ltd.)*,
    No. 19-20152, 983 F.3d 766, 2020 U.S. App. LEXIS 39462 (5th Cir. Dec. 15,
    2020) .........................................................................................................................9

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ...................................................................................3

*Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.)*,
    326 B.R. 301 (Bankr. D. Del. 2005) ......................................................................11

*Edionwe v. Bailey*,
    860 F.3d 287 (5th Cir. 2017) ...................................................................................2

*Faulkner v. Kornman (In re Heritage Org., L.L.C.)*,
    No. 04-35574-BJH-l l, 2008 Bankr. LEXIS 3230 (Bankr. N.D. Tex. Dec. 12,
    2008) .......................................................................................................................10

*Feldman v. Carbone (In re Carbone)*,
    615 B.R. 76 (Bankr. E.D. Pa. 2020) ........................................................................9

*In re Fornesa*,
    No. 12-37238-H3-13, 2016 WL 2930459 (Bankr. S.D. Tex. May 13, 2016) ..........2

*Frontier Bank v. Brown (In re Northern Merchandise, Inc.)*,
    371 F.3d 1056 (9th Cir. 2004) ...............................................................................14

*Garner v. Sherwood (In re Jones)*,
No. 16-41283-ELM-7, 2019 Bankr. LEXIS 795 (Bankr. N.D. Tex. Mar. 11, 2019) ........................................................................................................................5

*GE Capital Commer., Inc. v. Wright & Wright, Inc.*,
No. 3:09-CV-572-L, 2009 U.S. Dist. LEXIS 121472 (N.D. Tex. 2009)..................8

*Gines v. D.R. Horton, Inc.*,
699 F.3d 812 (5th Cir. 2012) ...................................................................................1

*Harman v. First American Bank (In re Jeffrey Bigelow Design Group, Inc.)*,
956 F.2d 479 (4th Cir. 1992) .................................................................................14

*Hornberger v. Davis Cedillo & Mendoza, Inc. (In re Olmos Equip., Inc.)*,
601 B.R. 412 (Bankr. W.D. Tex. 2019)..............................................................4, 5

*Janvey v. Alguire*,
846 F. Supp. 2d 662 (N.D. Tex. 2011) ....................................................................8

*Janvey v. Golf Channel, Inc.*,
834 F.3d 570 (5th Cir. 2016) .................................................................................14

*Janvey v. Univ. of Miami*,
No. 3:11-CV-0041-N, 2013 U.S. Dist. LEXIS 161340 (N.D. Tex. 2013) ..............8

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
453 B.R. 645 (N.D. Tex. 2011).......................................................................12, 13

*In re Kroh Brothers Dev. Co.*,
137 B.R. 332 (W.D. Mo. 1992) ...............................................................................5

*Lane v. Halliburton*,
529 F.3d 548 (5th Cir. 2008) ...................................................................................2

*Life Partners Holding, Inc. v. Cowley*,
926 F.3d 103 (5th Cir. 2019) ...................................................................................8

*Litzler v. Etheridge (In re Gordon)*,
No. 02-32599-HDH-7, 2004 Bankr. LEXIS 2570 (Bankr. N.D. Tex. Sept. 27, 2004) ......................................................................................................................10

*In re Longview Aluminum, LLC*,
657 F.3d 507 (7th Cir. 2011) ...................................................................................6

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ...............................................................................1, 2

*Matson v. Strickland (In re Strickland)*,
230 B.R. 276 (Bankr. E.D. Va. 1999)......................................................................7

*Official Comm. of Unsecured Creditors v. Foss (In re Felt Mfg. Co.)*,
371 B.R. 589 (Bankr. D.N.H. 2007) ......................................................................12

*Ogle v. Morgan*,
No. 3:19-CV-1838-S, 2020 WL 4530621 (N.D. Tex. Aug. 6, 2020) ......................9

*In re Richmond*,
    429 B.R. 263 (Bankr. E.D. Ark. 2010) ................................................................7

*Rubin v. Manufacturers Hanover Trust Co.*,
    661 F.2d 979 (2d Cir. 1981)................................................................14

*Shah v. Univ. of Tex. Sw. Med. Sch.*,
    54 F. Supp. 3d 681 (N.D. Tex. 2014) ................................................................8

*In re Soza*,
    542 F.3d 1060 (5th Cir. 2008) ................................................................9

*In re Talsma*,
    436 B.R. 908 (Bankr. N.D. Tex. 2010)................................................................7

*Taylor v. Rothstein Kass & Co.*,
    No. 3:19-CV-1594-D, 2020 WL 554583 (N.D. Tex. Feb. 4, 2020) ........................9

*Villarreal v. Wells Fargo Bank, N.A.*,
    814 F.3d 763 (5th Cir. 2016) ................................................................3

*In re XYZ Options*,
    154 F.3d 1262 (11th Cir. 1998) ................................................................10

## Statutes

11 U.S.C. § 101(2) ................................................................4

11 U.S.C. § 101(15) ................................................................4

11 U.S.C. § 101(31) ................................................................4, 5

11 U.S.C. § 101(31)(E) ................................................................4

11 U.S.C. § 548(d)(2)(A)................................................................13

## Other Authorities

Fed. R. Civ. P. 9(b) ................................................................8

Fed. R. Civ. P. 12(b)(6)................................................................3

Fed. R. Civ. P. 12(d) ................................................................3

COMES NOW, Alan D. Halperin, solely in his capacity as the Unsecured Creditor Trustee for Senior Care Centers, LLC, *et al.* (the "Plaintiff" or "Trustee") and hereby files this response (the "Response") in opposition to the Motion to Dismiss [Docket No. 7] (the "Motion") and Brief in Support [Docket No. 8] (the "Brief") filed by B & C Investments LLC (the "Defendant" or "B & C"), and respectfully show as follows:

## SUMMARY OF THE RESPONSE

The Defendant, whose principal Allen Boerner was the indirect majority owner of the Debtors and Granite Investment Group and held a seat on the Debtors' board of directors, filed the Motion in a desperate attempt to delay liability. The Motion should be denied because the Defendant failed to identify any pleading deficiencies in the Complaint. The Defendant asserts four grounds for dismissal: (1) the Trustee failed to plead the Defendant is an insider; (2) the Trustee failed to plead an actual fraudulent transfer; (3) the Trustee failed to plead the insolvency of the Debtors; and (4) the Trustee failed to plead that SCC did not receive reasonably equivalent value. Each of these arguments is without legal basis. As discussed in more detail herein, the Trustee pled these matters with adequate detail and, accordingly, this litigation should proceed to discovery without further delay.

## APPLICABLE LEGAL STANDARD

"Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation omitted). When faced with a Rube 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012); *see also Lormand*, 565 F.3d at 232.

1

To survive a motion to dismiss, a plaintiff need only plead a claim that is plausible, by providing "the plaintiff's grounds for entitlement to relief" and "factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand*, 565 F.3d at 232 (internal quotation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *In re Fornesa*, No. 12-37238-H3-13, 2016 WL 2930459, at *2 (Bankr. S.D. Tex. May 13, 2016) ("The complaint need not contain detailed factual allegations, but must set forth the plaintiff's grounds for entitlement to relief, including factual allegations that, when assumed to be true, raise a right to relief above the speculative level.").

"Under Rule 12(b)(6), a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 555-57) (emphasis added).  Additionally, "a court should freely give leave" to amend pleadings "when justice so requires." *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (quoting FED. R. CIV. P. 15(a)(2)).

## ARGUMENTS AND AUTHORITIES

### I.    The Court should not consider additional facts alleged by the Defendant.

As a threshold matter, the Court should not indulge the Defendant's efforts to essentially argue for summary judgment under the guise of a Rule 12(b)(6) motion. In the Motion, the Defendant improperly bombards the Court with three pages of extraneous alleged facts, and an Appendix containing over one-hundred pages of improperly filed exhibits. The Defendant has not even filed an Answer yet, and the Plaintiff has had no meaningful opportunity to seek discovery from the Defendant. At this stage of the proceeding, only the allegations in the

Complaint matter, along with reasonable inferences therefrom. The Court should therefore disregard the additional allegations and purported evidence proffered by the Defendant.

When ruling on a motion to dismiss for failure to state a claim, courts generally look only at the allegations in the complaint, assuming their truth, and making all reasonable inferences in favor of the plaintiff. *See Villarreal v. Wells Fargo Bank, N.A.,* 814 F.3d 763, 766 (5th Cir. 2016). Rule 12(d) suggests that the Court should exclude any matters outside the complaint. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  The Court should exclude the additional matters that the Defendant seeks to introduce because conversion of the Motion to a motion for summary judgment would be inappropriate.

Generally, courts considering additional matters beyond the complaint must convert the 12(b)(6) motion to one for summary judgment, give all parties proper notice of that conversion, and allow all parties a "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  The trial court is limited to considering the contents of the pleadings and the attachments thereto when deciding a motion to dismiss under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6); *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000). Here, the Plaintiff would be greatly prejudiced by a conversion of the Motion to Dismiss to a motion for summary judgment because he is at an informational disadvantage, has not yet commenced discovery, and would be deprived of an opportunity to present all the material that is pertinent to such a motion. That concern is exacerbated in a situation where, as here, the Plaintiff was not involved in the relevant transactions and communications between the Debtors and the Defendant.

## II.        The Trustee sufficiently alleges that the Defendant is an insider of SCC.

The Defendant argues that the Trustee fails to plead that the Defendant was a statutory or non-statutory insider to the Debtors because he "does not allege any facts that plausibly show the Defendant is or was an insider." *See* Motion ¶ 11. The Defendant's argument is specious.  The Defendant's principal indirectly held a majority ownership interest in the Debtors and served on the Debtors' board of directors at all times relevant to the Complaint.  A closer relationship is nearly impossible.  The Defendant qualifies as both a statutory and a non-statutory insider.  *See generally* 11 U.S.C. § 101(31); *Hornberger v. Davis Cedillo & Mendoza, Inc. (In re Olmos Equip., Inc.)*, 601 B.R. 412, 420–21 (Bankr. W.D. Tex. 2019).

The Plaintiff has alleged that the Defendant qualifies as a statutory insider as it is a person in control of the Debtor and under the affiliate provisions of 11 U.S.C. § 101(31)(E). Under section 101(31)(E), an insider is also defined as an "affiliate, or insider of an affiliate as if such affiliate were the debtor[.]" The term affiliate is in turn defined in section 101(2) to mean:

> (A) entity[2] that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities --
>
>> (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
>>
>> (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;
>
> (B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . .

As pled in the Complaint, the Defendant's principal Allen Boerner was a director of the Debtors,

---

[2] Section 101(15) provides that the term entity "includes person, estate, trust, governmental unit, and United States trustee."

and indirectly owned the Debtors' equity.  *See* Compl. ¶ 5.  The Complaint further provides that

Boerner was the principal of the Defendant.  Boerner was therefore an insider of the Debtors.

*See In re Kroh Brothers Dev. Co.*, 137 B.R. 332, 333-35 (W.D. Mo. 1992) (holding that

commercial bank was an insider of debtor where bank's director owned debtor's equity).

The Fifth Circuit has noted that "cases which have considered whether insider status

exists generally have focused on two factors in making that determination: (1) the closeness of

the relationship between the parties and (2) whether the transaction . . . [was] conducted at arm's

length." *Browning Interests v. Allison (In re Holloway)*, 955 F.2d 1008, 1011 (5th Cir. 1992)

(citations omitted).  Further, an insider as a person or entity with "a sufficiently close

relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing

at arm's length with the debtor." *Id.* (discussing legislative history of the Bankruptcy Code, 11

U.S.C.A. § 101(31) definition of "insider").

As the Complaint asserts, a close relationship between the Defendant and SCC is clear—

the Defendant's principal served on the Debtors' board of directors and was its indirect majority

owner.  *Hornberger, supra* (citing the Fifth and Tenth Circuits for the rule that "to be a non-

statutory insider that relationship between the debtor and creditor be not only close, but that is

also at less than arm's length," and finding no closeness pled because the trustee did not allege a

pre-existing relationship.).  There is an inherent closeness (and pre-existing relationship) an

equity holder has with a company. The Fifth Circuit has expressly noted that "insider status is

not dependent upon a finding of control and can instead be found to exist where the closeness of

the parties' relationship was so great at the time of the transaction that it can be fairly determined

that the transaction was not conducted at arm's length but rather on the basis of the parties'

affinity." *Garner v. Sherwood (In re Jones)*, No. 16-41283-ELM-7, 2019 Bankr. LEXIS 795, at *

31–32 (Bankr. N.D. Tex. Mar. 11, 2019), citing *Browning, supra*. This is precisely the situation here. The Defendant was given an investment opportunity *because* of its connection to SCC and Granite.  SCC did not open this opportunity up to the public, or even to lenders without prior connections to the Debtors.  Further, the Defendant was nearly certain to be repaid because its principal owned and controlled the Debtors.

In *In re Longview Aluminum, LLC*, 657 F.3d 507, 510 (7th Cir. 2011), the Seventh Circuit Court of Appeals determined that a member of a debtor-Delaware limited liability company was an insider despite the fact that he did not have the right to review the debtor's books and records. In the instant case, the Defendant is also a member of SCC, which is a Delaware limited liability company.[3] Accordingly, the Trustee has plausibly pled that the Defendant is an insider.

Further, as noted in the Complaint, the Defendant was an insider of the Debtors because of its relationship with the Debtors' majority indirect equity holder Granite, who it invested with in other deals and who insured that the Debtors paid the Note.  *See* Compl. ¶ 5.  The Defendant's relationship is subject to closer scrutiny than those dealing at arm's length with SCC.  The Defendant, who was an equity holder in SCC and aware of the Debtors' business dealings and financial challenges, accepted the Transfer from SCC while knowing SCC was not liable for the amounts owed under the Note between Granite and the Defendant. *See* Compl. ¶¶ 26-27, 29–30. As indicated in the Complaint, the relationship between SCC and the Defendant enabled the Defendant to obtain the Transfer.

Moreover, given that the Defendant argues that it is not an insider of the Debtors, it is curious that it was able to obtain documents which are commercially sensitive, including the purported note between Granite and the Debtors (which, if authentic, would have been a

---

[3] *See* Docket No. 1, Bankruptcy Case No. 18-33967 at p. 8.

document that the Defendant would not have had access to) and the Debtors' financial statements.  If the Defendant was not an insider of the Debtors, it would not have access to information of this nature.

Further, the fact that the Defendant asserts that this was a tripartite transaction establishes its insider status.  If true, the Defendant was effectively able to provide credit to the Debtors (in which its principal owned equity) without the risk associated with lending to a troubled entity, because its borrower was Granite.  No other party providing goods, services, or credit to the Debtors had that assurance, other than the other insiders who the Trustee has sued in eleven similar actions pending before the Court.[4]

To the extent the Defendant contends that the Trustee's allegations do not "establish" that the Defendant was an insider,[5] the Trustee is not required to establish the Defendant's insider status at this stage of the case. The "question of whether a creditor is an insider of the debtor is primarily a question of fact to be decided at some point after the pleading stage." *In re Talsma*, 436 B.R. 908, 915 (Bankr. N.D. Tex. 2010) ("where a debtor and another have a close relationship, a factual inquiry is necessary to determine whether or not the latter is an insider.") (*citing In re Richmond*, 429 B.R. 263, 297 (Bankr. E.D. Ark. 2010) (determination is fact-intensive and must be decided case-by-case); *Matson v. Strickland (In re Strickland)*, 230 B.R. 276, 285 (Bankr. E.D. Va. 1999) (same)).  Accordingly, in light of the plausible allegations in the Complaint, the Defendant's insider status will need to be determined at a later stage of this litigation.

---

[4] According to SCC's Schedules, none of its debts were guaranteed by non-debtor parties. *See* Docket No. 509.  Here, the Defendants, who were equity investors in the Debtors, had the benefit of the Debtors' indirect parent's credit support.  Even the Debtors' secured lenders did not have that benefit.  These facts, which are pled in the Complaint or are contained in SCC's schedules, further bolster the allegations that the Defendants are insiders.

[5] *See* Motion ¶ 6(i) ("the Complaint should be dismissed because it fails to establish that the Defendant is an insider. . . .").

Alternatively, if the Court determines that the Trustee has failed to plead sufficient facts to support his assertion that the Defendant was an insider, the Court should provide the Trustee with an opportunity to amend the Complaint. *See Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F. Supp. 3d 681, 707 (N.D. Tex. 2014) (citing *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567–68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.")).

### III.    The Trustee properly pleads a claim for an actual fraudulent transfer.

The Defendant argues that the Trustee has not pled the "who, what, when, where, and why" as to the fraudulent conduct under Federal Rule of Civil Procedure 9(b).[6]  While the Fifth Circuit does not require this pleading standard, the Trustee has pled facts regarding each of these questions.   The Trustee clearly pled the identity of the transferor (SCC), the amount of the Transfer ($1,090,136.99), the date of the Transfer (February 5, 2018), and the reason for the transfer (to pay Granite's debt).   Moreover, the Complaint provides four and a half pages of detail regarding the circumstances surrounding the Transfer, and considerable detail about the Defendant's insider status.   The Defendant's argument that the Trustee has not properly pled a claim for an actual fraudulent transfer is meritless.

---

[6] The Fifth Circuit Court of Appeals has not held that Rule 9(b) applies in the context of an actual fraudulent transfer claim.  *See Life Partners Holding, Inc. v. Cowley,* 926 F.3d 103, 118 (5th Cir. 2019) ("[h]ere, because [the plaintiff's] allegations are sufficient under either standard, we need not weigh in on this vexing question.").

Courts within the Fifth Circuit have held that Rule 9(b) does not apply.  *See, e.g., Janvey v. Alguire,* 846 F. Supp. 2d 662, 676-77 (N.D. Tex. 2011); *Janvey v. Univ. of Miami*, No. 3:11-CV-0041-N, 2013 U.S. Dist. LEXIS 161340 (N.D. Tex. 2013); *GE Capital Commer., Inc. v. Wright & Wright, Inc.*, No. 3:09-CV-572-L, 2009 U.S. Dist. LEXIS 121472 (N.D. Tex. 2009); *Bsg Clearing Solutions v. McKay*, 2017 U.S. Dist. LEXIS 226551 at *8-9 (W.D. Tex. 2017) ("in cases against transferees, a plaintiff need merely allege that the transferee was 'the recipient of funds fraudulently obtained,' not that the transferee 'committed any fraudulent act that caused the funds to be transferred.'")

Because parties to an actual fraudulent transfer rarely acknowledge their fraudulent intent, courts rely on "badges of fraud" as circumstantial proof of intent. *Cohen v. Gilmore (In re Ala. & Dunlavy, Ltd.)*, No. 19-20152, 983 F.3d 766, 2020 U.S. App. LEXIS 39462, at * 11 (5th Cir. Dec. 15, 2020) ("Because the intent to hinder, delay, or defraud creditors is seldom susceptible of direct proof, TUFTA provides badges of fraud on which creditors and courts can rely."); *see also Ogle v. Morgan*, No. 3:19-CV-1838-S, 2020 WL 4530621 at * 7 (N.D. Tex. Aug. 6, 2020).

TUFTA section 24.005(b)(1)-(11) includes a nonexclusive list of factors that may be used in determining actual fraud. The badges of fraud courts often consider include, but are not limited to: "(1) the relationship between the debtor and the transferee; (2) consideration for the conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor over the property transferred; and (6) secrecy or concealment of the transaction." *In re Ala. & Dunlavy, Ltd.*, 2020 U.S. App. LEXIS 39462, at * 11 (5th Cir. Dec. 15, 2020) ("Evidence of a single badge of fraud does not conclusively demonstrate intent, but a confluence of several presents a strong case of fraud"); *In re Soza*, 542 F.3d 1060, 1066 (5th Cir. 2008) ("Not all, or even a majority of the 'badges of fraud' must exist to find actual fraud,' but when several of these indicia of a fraud are found, they can be a proper basis for an inference of fraud"); *Taylor v. Rothstein Kass & Co.*, No. 3:19-CV-1594-D, 2020 WL 554583, at *30 (N.D. Tex. Feb. 4, 2020) (same). Ultimately, the determination of whether a transfer was made with fraudulent intent is a question of fact "rarely susceptible to resolution at the summary judgment stage," let alone on a motion to dismiss. *Feldman v. Carbone (In re Carbone)*, 615 B.R. 76, 84 (Bankr. E.D. Pa. 2020) (citations omitted).

The concurrence of several badges of fraud in the same case "will always make out a strong case of fraud." *Litzler v. Etheridge (In re Gordon)*, No. 02-32599-HDH-7, 2004 Bankr. LEXIS 2570, *6 (Bankr. N.D. Tex. Sept. 27, 2004); *In re XYZ Options*, 154 F.3d 1262, 1272 (11th Cir. 1998); *Faulkner v. Kornman (In re Heritage Org., L.L.C.)*, No. 04-35574-BJH-l l, 2008 Bankr. LEXIS 3230 at *23 (Bankr. N.D. Tex. Dec. 12, 2008) (holding that the presence of three badges of fraud created genuine issues of material fact regarding the transferor's intent to defraud).

The Trustee has sufficiently pled the existence of the "badges of fraud" to survive a Rule 12(b)(6) motion.  The Trustee alleges the following seven "badges of fraud":

a)  the Debtors, including SCC, were insolvent at the time of the Transfer;

b)  the Transfer was paid to an insider of the Debtors which was aware of the financial peril the Debtors were facing;

c)  the Defendant was aware of the Debtors' insolvency, debt structure, and inability to recover;

d)  the Defendant was aware that the Debtors were not liable under the Note;

e)  the Transfer was paid occurred shortly before or shortly after a substantial debt was incurred;

f)  the Transfer was unreasonably high in light of the consideration rendered by the Defendant; and

g)  the Debtors' management was in disarray at the time of the Transfer.

*See* Compl. ¶ 48.

Accordingly, the Defendant's argument that the "knowing intent" of SCC's officers and directors is at issue[7] does not support dismissal.  Mr. Boerner's status as a director of SCC and the principal of the Defendant, as well as the badges of fraud, which were clearly pled in the Complaint, support a finding of knowing intent (to the extent that is the applicable standard) and

---

[7] Motion ¶¶ 16–17.

the denial of the Motion, particularly here where the Transfer was made to an entity controlled

by the Debtors' indirect majority equity holder and director.[8]  Moreover, while no requirement

exists to plead "why" the Transfer was made, the Trustee has clearly done that – *i.e.*, to enrich

the Defendant at the expense of the Debtors and their arms' length creditors.   The Trustee

properly pled numerous badges of fraud to evidence actual intent of the Defendant. The Motion

should therefore be denied.

IV.     **The Trustee properly alleges that the Debtors were insolvent.**

The Defendant's arguments that the Trustee did not adequately plead insolvency are

unpersuasive and disregard applicable law. The Defendant claims that the Trustee is required to

plead SCC's insolvency with specificity, stating that the Complaint fails because "the Trustee

does not allege any specific payroll that the Debtors were allegedly 'unable to meet' or how

often this occurred," *see* Motion ¶ 24, or that the Trustee does not state when the false financial

statements were made, *see* Motion ¶ 23. Insolvency is not to be assessed under Rule 9(b), but

under Rule 8. Rule 8 contains no such particularity requirement. Accordingly, the Defendant's

argument that the Trustee should have plead Debtors' insolvency with particularity fails.

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to

resolve disputed facts or decide the merits of a case." *Comm. of Unsecured Creditors v. DVI Bus.*

*Credit, Inc. (In re DVI, Inc.)*, 326 B.R. 301, 305 (Bankr. D. Del. 2005); *see Adelphia Commc'ns*

*Corp. v. Bank of Am., N.A. (In re Adelphia Commc.'ns Corp.)*, 365 B.R. 24, 36-37 (Bankr.

S.D.N.Y. 2007) (denying defendants motion to dismiss for failure to adequately plead insolvency

because the creditors' committee "made the necessary allegations as to insolvency in its

---

[8] The Defendant cites *In re Actrade Fin. Tech. Ltd.*, 337 B.R. 791 (Bankr. S.D.N.Y. 2005) for the proposition that a plaintiff must prove "knowing intent" on the part of the transferor.  The Defendant fails to point out that the court in *Actrade* noted that the existence of several badges of fraud can constitute clear and convincing evidence of actual intent.  *Id.* at 809.  The Complaint clearly satisfies that standard.

complaint and a 12(b)(6) motion is not the proper means to determine disputed issues of fact");

*Official Comm. of Unsecured Creditors v. Foss (In re Felt Mfg. Co.)*, 371 B.R. 589, 637 (Bankr.

D.N.H. 2007) ("To survive a motion to dismiss, a plaintiff only has to allege sufficient facts, not

prove them."). The Trustee's allegations of insolvency are subject to the pleading requirements

of *Twombly* and *Iqbal*, but no higher pleading standard is required. Stating plausible grounds for

the inference of insolvency simply calls for enough facts to raise a "reasonable expectation that

discovery will reveal evidence of" insolvency. *Twombly*, 550 U.S. at 556. The Trustee has

alleged sufficient factual material to infer insolvency, and the Trustee need not prove insolvency

with the specificity urged by the Defendant.

The Complaint sufficiently alleges that SCC was undercapitalized and had been insolvent

(i.e., the value of their assets was exceeded by the value of their liabilities, as the Complaint

states) "from at least January 2014 forward," as evidenced in part by (1) in 2016, the Debtors'

condition was so poor that they defaulted under their credit agreement with their asset-based

lender, CIBC Bank USA; (2) the Debtors were "unable to meet their payroll obligations" (an

allegation the Motion fails to mention); (3) material misrepresentations in the Debtors' financial

statements resulting in the overstatement of assets by tens of millions of dollars; and (4) the

Debtors were prohibited from incurring unrestricted additional indebtedness because of their

precarious financial condition in 2017. See Compl. ¶¶ 17–23.

In *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645 (N.D. Tex. 2011), the plaintiff

made similar insolvency allegations to those pled in the Complaint. There, the plaintiff-trustee

alleged that the debtor's financial statements were inaccurate. *Id*. at 674. The court found that

the allegations that the financial statements were not accurate, and that the debtor was insolvent,

were sufficient to defeat a Rule 12(b)(6) motion. *Id.* at 675. This Court should adopt the same rationale in the instant case.

Additionally, the Defendant improperly raised factual matters that should not be addressed at the pleading stage. The Defendant speculates that the Debtors' EBITDA covenant default was a result of insolvency because it is possible to default on an EBITDA covenant and still be solvent, and that the Debtors' accounts receivable were not overstated but instead Debtors "simply did a poor job of billing and collecting," *see* Motion ¶ 23. As noted by the *DVI* and *Adelphia* courts, a motion to dismiss is not the time to resolve disputed facts or to decide the merits of the case. The Defendant's speculation about factual issues is not sufficient grounds for a motion to dismiss.

The Trustee has asserted sufficient facts, taken as true, to support the Debtors' insolvency when the Transfer was made. Accordingly, the Motion should be denied.

**V.     The Trustee sufficiently pleads that SCC did not receive reasonably equivalent value for the Transfer.**

The Motion asserts that SCC received "value" for the Note and that SCC, not Granite, was the party that received and benefitted from the loan evidenced by the Note. The basis for this assertion is Exhibit A to the purported Note, "Purpose of the Loan," which states that Granite is using the loan to advance working capital to SCC. *See* App. 000043 to the Motion. However, the Court should not consider any of the documents attached to the Appendix as they are not a part of the Complaint.

Section 548 of the Bankruptcy Code does not define "reasonably equivalent value," but it does define "value," as the Defendant points out. "Value" includes the "satisfaction or securing of a present or antecedent ***debt of the debtor***." See 11 U.S.C. § 548(d)(2)(A) (emphasis added).

The debt evidenced in the Note was not SCC's—the debt was Granite's.  Whether SCC received the working capital from the Note is a question of fact to be explored through discovery, not at the pleading stage.  It is clear that the Defendant concedes it received payment on a debt that was not owed to it and that it had access to the Debtors that few other creditors had, namely because of a) its relationship as equity owner of the Debtors and b) its relationship with Granite.  Accordingly, as a matter of basic avoidance law, the transfer is avoidable because SCC had no obligation to the Defendant.

The Defendant cites *Janvey v. Golf Channel, Inc*., 834 F.3d 570 (5th Cir. 2016) for the proposition that payment of an antecedent debt is value.  *Golf Channel* is distinguishable from this case.  First, *Golf Channel* involved an arm's length vendor that supplied media services to the Debtors.  The instant case involves an insider lender to Granite that was paid by the Debtors.  Moreover, *Golf Channel* was decided at summary judgment rather than on a Rule 12(b)(6) motion.  Accordingly, *Golf Channel* is inapposite.

The Defendant also cites unpersuasive cases from other circuits, none of which support the proposition that, at the motion to dismiss stage, the Court should determine that SCC received value as a non-obligor to the debt evidenced by the Note.  *Frontier Bank v. Brown (In re Northern Merchandise, Inc.)*, 371 F.3d 1056, 1059 (9th Cir. 2004) (appeal of summary judgment); *Harman v. First American Bank (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479, 481 (4th Cir. 1992) (appeal of bankruptcy court findings after evidence at trial closed); *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 992 (2d Cir. 1981) (appeal finding after bench trial). Instead, in each case cited, after the close of discovery or a reasonable time into the discovery period, the district court made the determinations which the Defendant asserts

are applicable at this preliminary stage. The cases cited are not analogous for this reason and should be disregarded.

Without limitation, the following issues need to be explored during discovery in relation to the purported financing arrangement:

- Was a loan made from the Defendant to Granite?

- Did the Debtors receive any loan proceeds from that transaction?

- What was the amount of the loan proceeds received by the Debtors?

- What were the loan proceeds used for, if anything?

- Why did the Debtors, rather than Granite, pay the loan when it was made to Granite?

- Did the Debtors execute the alleged note to Granite?

- If so, did the Debtors have the appropriate corporate authority to do so?

- Did Granite execute the alleged note to the Defendant?

- If so, did Granite have the appropriate corporate authority to do so?

- If the Defendant's assertions are true, why wasn't the loan made directly by the Defendant to the Debtors?

These issues, among others, warrant the denial of the Motion and moving forward with discovery.

The Complaint sufficiently pleads that SCC did not receive reasonably equivalent value for the Transfer. The debt was not SCC's and whether SCC received any value, let alone reasonably equivalent value, is a question of fact that must be explored during discovery. Again, as the *DVI* and *Adelphia* courts instructed, a motion to dismiss is not the time to resolve disputed facts or to decide the merits of the case.

## CONCLUSION

For the reasons discussed above, the Trustee respectfully requests that the Court deny the Motion and grant such further relief in favor of the Trustee as may be warranted under the circumstances. To the extent the Court determines that the Complaint insufficiently states a plausible claim for any count, the Court should grant the Trustee leave to amend the Complaint.

Respectfully submitted this 10th day of February, 2021.

GREENBERG TRAURIG, LLP

By: */s/ John D. Elrod*
Shari L. Heyen
Texas Bar No. 09564750
*HeyenS@gtlaw.com*
1000 Louisiana St., Suite 1700
Houston, Texas 77002
Telephone:     (713) 374-3564
Facsimile:     (713) 374-3505

– and –

John D. Elrod
*ElrodJ@gtlaw.com*
Terminus 200, Suite 2500
3333 Piedmont Road, NE
Atlanta, Georgia 30305
Telephone:     (678) 553-2259
Facsimile:     (678) 553-2269

COUNSEL FOR PLAINTIFF ALAN D. HALPERIN, AS UNSECURED CREDITOR TRUSTEE

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2021, I caused a true and correct copy of the foregoing document to be served via notice of CM/ECF filing upon all parties registered to receive notifications of filing in this case.

*/s/ John D. Elrod*
John D. Elrod